## BARRON, MEADE & CO. vs. PAULLING.

[BILL IN EQUITY BY ASSIGNEE FOR REDEMPTION.]

1. *Rents and profits.*—In taking an account of the mortgage debt, between the mortgagees and an assignee of the equity of redemption, the former are chargeable only with the amount of rents actually received by them, unless they have been guilty of fraud or willful neglect; and where rents are received by one of the mortgagees individually, under a judgment in his favor against the assignee, the amount so received by him must be credited on the mortgage debt, unless it is shown to have been received by him by virtue of a right independent of the mortgage.

2. *Conclusiveness of judgment.*—A judgment in an action of trespass to try titles, which recites that the defendant has voluntarily abandoned the possession of the land, with all claim of title thereto; that the plaintiff has taken possession; and that thereupon came a jury, who assessed the plaintiff's damages ; and by which it is considered by the court, that the plaintiff recover of the defendant the damages so assessed,—does not preclude the defendant, in a subsequent chancery suit to redeem the land, instituted by him as an assignee of the equity of redemption, from insisting that the recovery was based on a mortgage to a partnership, of which the plaintiff was a member, and that the mortgagees are therefore chargeable with the amount received by the plaintiff under the judgment.

3. *Costs at law, and attorney's fees.*—The mortgagees are not chargeable with the amount of costs incurred and paid by the assignee in an unsuccessful attempt to defend the possession at law, or to resist the collection of rents and profits; nor can they charge the assignee with their own attorney's fees.

4. *Statutory penalties accountable for as rents and profits.*—The mortgagee

having recovered a judgment against the assignee of the equity of re-
demption, in a statutory action of debt, for cutting timber on the
mortgaged lands, the assignee is entitled to have the amount paid by
him under the judgment credited on the mortgage debt, and to have
the judgment perpetually enjoined on discharging the mortgage debt.

5. *Conclusiveness of judgment by consent.*—Where the plaintiff consents of
record, on motion for a new trial by the defendant, that the verdict
may be reduced to a specified sum, for which a judgment is thereupon
rendered in his favor; and the judgment further recites, " that this
agreement between the parties is made and entered into as a compro-
mise and final settlement of the matters and things in controversy in
this suit,"—the defendant is not thereby precluded, in a subsequent
chancery suit, instituted by him as an assignee of the equity of re-
demption, against the plaintiff as mortgagee, from insisting that the
amount paid by him under the judgment shall be credited on the
mortgage debt.

APPEAL from the Chancery Court of Marengo.
Heard before the Hon. JAMES B. CLARK.

THE material facts of this case, stated in the order of
their occurrence, are these: In August, 1846, one James
McNaughten executed a mortgage, by which he conveyed
a tract of land to Barron, Meade & Co., to secure the pay-
ment of a promissory note therein described, and which
contained a power of sale in the event of the non-payment
of the note on or before the 1st January, 1847. The land
was sold by the sheriff, on the first Monday in January,
1849, under a *venditioni exponas* issued from the circuit
court, which was founded on the levy of sundry executions
on judgments rendered by a justice of the peace; at which
sale, Lucien Meade, one of the partners composing the firm
of Barron, Meade & Co., became the purchaser, and re-
ceived the sheriff's deed. In May, 1851, Meade instituted
an action of trespass to try titles, against Wm. K. Paul-
ling, to recover the possession of the land, with damages
for its detention; and in May, 1853, recovered a judgment,
of which the following is a copy:

"This day came the parties, by their attorneys; and it
appearing to the satisfaction of the court, that the defend-
ant has voluntarily abandoned the possession of, and all
claim of title to the premises sued for, and that the said

plaintiff has taken possession thereof; thereupon came a jury," &c., "who, being duly elected," &c., "well and truly to assess the plaintiff's damages for the detention of the premises and the trespass thereon, upon their oaths do say, that they assess plaintiff's damages at the sum of two hundred dollars. It is therefore considered by the court, that the plaintiff recover of the defendant the said sum of two hundred dollars, his damages assessed by the jury as aforesaid, and also his costs of suit."

In the spring of 1851, (the precise time is not shown by the record,) Meade instituted an action at law against Paulling, to recover the statutory penalty for cutting down trees on the mortgaged land ; and the declaration also contained a count for money had and received. From the defective statement of the pleadings contained in the record, it is impossible to say on what issue the cause was tried. At the November term, 1853, a judgment, on the verdict of a jury, was rendered for the plaintiff, for fifteen hundred dollars damages ; but, on a subsequent day of the term, the defendant having moved for a new trial, the following judgment was rendered in the cause: "Came the parties, by their attorneys ; and the defendant moves the court for a new trial, because the finding of the jury is excessive, and on the ground of surprise," &c.; "and the motion being heard and considered by the court, the said plaintiff now here agrees and consents, that the verdict of the jury, and the judgment of the court in this cause, be reduced to three hundred and fifty dollars ; and the said defendant consents, that judgment be entered against him, for said sum of three hundred and fifty dollars ; and this agreement between the parties is made and entered into as a compromise and final settlement of the matters and things in controversy in this suit. Thereupon, it is considered by the court, that the verdict of the jury be reduced to the sum of three hundred and fifty dollars, and that said plaintiff recover of said defendant the said sum of three hundred and fifty dollars, and also his costs."

On the 11th March, 1854, Paulling filed his bill in

equity, against Barron, Meade & Co., for a redemption of the mortgaged land, and an account of the rents and profits; claiming the right to redeem as assignee of the equity of redemption, and also as assignee of several of the judgments under which the land had been sold by the sheriff; and he also filed an amended bill, a few day afterwards, asking an injunction of the judgment which Meade had obtained against him, as above stated, for cutting trees on the land. The defendants demurred to the bill, for want of equity; and they also filed answers, in which they denied the complainant's right to redeem. On final hearing, on pleadings and proof, the chancellor dismissed the bill; but his decree was reversed by this court, on appeal, at its January term, 1858, and the cause remanded; the court holding, that the sheriff's sale of the lands, at which Meade became the purchaser, was a nullity; and that the complainant, as an assignee of the equity of redemption, might maintain a bill in equity to redeem.——See the case reported in 32 Ala. 9–12.

At the March term, 1859, the cause was again submitted to the chancellor, who, without a reference, rendered the following decree: " This cause came on to be heard, on bill, answer, testimony, &c.; and, upon consideration thereof, it is ordered, that the injunction heretofore granted be perpetuated. It is further ordered, that the complainant pay to the defendants the sum of $317 43, with interest from this date. It is further ordered, that the defendant, within ten days after payment of said sum, execute and deliver to the complainant a quit-claim deed to the land described in the bill. It is further ordered, that the defendants pay the costs of suit, and that execution may issue. The amount which appears to be due on the mortgage debt, is $723 59; and the amount due Paulling, by reason of damages and costs on the judgment against him in favor of the defendants, is $406 16; which leaves a balance of $317 43."

From this decree each party appeals, and each assigns the decree as error.

Barron, Meade & Co. v. Paulling.

W. M. BROOKS, for the defendants.
GOLDTHWAITE, RICE & SEMPLE, *contra.*

A. J. WALKER, C. J.—The bill in this case is to be regarded as filed by the assignee of an equity of redemption, for the purpose of redeeming the mortgaged lands.—*Paulling v. Barron, Meade & Co.,* 32 Ala. 9. It appears very conclusively, that the mortgagees were never in possession of the land, until the recovery in the action of trespass to try titles by Meade against the complainant; and we have no evidence that either of them ever received any rent for the land after that recovery. Lesueur, the only witness who testifies on the subject, deposes that, the houses and fences having gone into decay; he, as the agent of the defendants, permitted the complainant to have the place as a pasture; and we infer from the testimony that the complainant paid no rent. Upon this state of the case, the defendants are not chargeable with rents, other than those recovered in the action of trespass to try titles. The mortgagee is only responsible, in a suit to redeem by the mortgagor or his assignee, for rents actually received, unless he has been guilty of fraud or willful neglect.—3 Powell on Mortgages, 939 *a;* 1 Hilliard on Mortgages, 418, § 3.

The crediting of the mortgage debt with the amount of rents received by one of the mortgagees, was proper. It is conceivable that a mortgagee might have a right to the rents and profits of the mortgaged land, derived from a source extrinsic and independent of the mortgage. If a mortgagee were by virtue of such a right to receive rents, the sum so received could not be appropriated in abatement of the mortgage debt. In this case, the mortgagee *in fact* had no right to the rents and profits, except such as the mortgage gave.

[2.] But it is said, that the judgment for the recovery of the land, and the rents by way of damages for its detention, was rendered in favor of one of the mortgagees, against the defendant; that a right of action, resulting from the mortgage, appertained to the two mortgagees jointly;

that therefore a recovery by one mortgagee, by its intrinsic force, demonstrated that it was based upon a right independent of the mortgage; and that the complainant, being the party defendant to the judgment, was estopped from controverting that inference from the judgment in favor of the single mortgagee. To this argument we can not assent. The judgment entry recites, that the defendant voluntarily abandoned the possession of the land, and all claim of title to it; that the plaintiff had taken possession thereof; that thereupon came a jury, who assessed the damages of plaintiff; and a judgment for the damages so assessed is rendered. The court, in its *consideratum est*, adjudges nothing, except that the plaintiff recover the assessed damages and costs; and the ascertainment by the verdict of the jury is not more extensive than the consideration of the court. The record, upon its face, is absolutely silent as to the source whence the plaintiff derived his claim.

Judgments may be conclusive as to the facts necessarily involved in them.—*Wittick v. Traun*, 25 Ala. 317; *Chamberlain v. Gaillard*, 26 Ala. 504; *Saltmarsh v. Bower*, 34 Ala. 613. That the plaintiff in the judgment derived his claim to the damages recovered from a source independent of the mortgage, is not necessarily involved in the judgment, or implied by it. It may as well comport with the supposition, that it was submitted to by the defendant upon the idea that a right to recover enured to the plaintiff as a member of the partnership to which the mortgage was given, or that the plaintiff had acquired the interest of the other mortgagee. The inference attempted to be forced upon the complainant, from his submission to the assessment of damages, is not a necessary deduction, and he can not be precluded from asserting the contrary. As mortgagee, the defendant Meade had a right to receive the rents and profits. We think his own answer shows, that he had no other real right. The pretense that he had acquired a right by the purchase at execution sale, is met with a flat negation by the decision of this court when we before

Barron, Meade & Co. v. Paulling.

passed upon it, for that decision declares the sale invalid.—
32 Ala. 9. One of the mortgagees having, by virtue of the
judgment, collected from the complainant rents and profits,
the sum so collected is a proper credit on the mortgage
debt, in taking the account of the same requisite to au-
thorize a redemption.

[3.] The court erred in crediting upon the mortgage debt
the sum paid in discharge of the costs adjudged against
Paulling. We know of no principle, upon which either a
mortgagor, or his assignee, can impose upon the mortgagee
the burden of reimbursing costs, which may have been in-
curred in an unsuccessful attempt to defend the possession
of the land, or resist the collection of rents and profits.

The mortgagees are not entitled to have from the com-
plainant any fees which they may have paid their attorneys.

[4.] We think a permanent injunction of the judgment
against the complainant for cutting timber trees ought to
have been granted, in such a manner as to become opera-
tive upon the discharge of the mortgage debt, and the
consummation of the redemption by the complainant. A
comparison of the parts of the bill and answer which
speak of the judgment, leads us to the conclusion, that,
under the rules of pleading, the fact that the judgment
was founded on penalties for cutting timber must be re-
garded as established. The mortgagee, standing by the law
in the light of a bailiff for the mortgagor or his assignee,
must be chargeable with whatever profit he received by vir-
tue of his mortgage title.—2 Powell on Mort. 946 ; 1 Hil-
liard on Mort. 417. Penalties for cutting timber from the
mortgaged premises constitute a profit, with which one
standing in the attitude of a bailiff is chargeable. The
plaintiff in the judgment had, in fact, no other title than
that of mortgagee ; and, for reasons already stated in refer-
ence to another judgment, we decide, that the judgment
founded upon the cutting of timber, in the name of one of
the mortgagees, does not conclusively imply that the plain-
tiff had a title independent and extrinsic of his character of
mortgagor. If the plaintiff in the judgment were to re-

ceive payment of it, it would be appropriated by the law to the discharge, *pro tanto*, of the mortgage debt; and therefore, if the complainant discharges that debt, the judgment ought to be perpetually enjoined, except as to the costs; but the perpetual injunction ought not to be operative, until the discharge of the mortgage debt.

[5.] There was nothing in the settlement, upon which the reduction of the judgment was based, which precludes the complainant from setting up his equitable rights in this case. That settlement is restricted to the matters in controversy in that particular suit, which pertained to the legal, not to the equitable rights of the parties.

On the appeal by the complainant, the chancellor's decree is affirmed; on the appeal by the defendants, the decree is reversed, and the cause remanded.